IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMMY L. STEINBISS, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 05-6018 |
| v. | **OPINION** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

APPEARANCES:

Philip Wolf, Esq.
WOLF AND BROWN L.L.C.
228 Kings Highway East
Haddonfield, New Jersey 08033
     Attorney for Plaintiff

Christopher J. Christie
United States Attorney
     By:  Marla Piazza-Siegel
          Special Assistant United States Attorney
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
26 Federal Plaza, Room 3904
New York, NY 10278
     Attorneys for Defendant

**SIMANDLE**, District Judge:

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g)

(2007), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of the

plaintiff, Tammy L. Steinbiss ("Plaintiff"), for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act.  See 42 U.S.C. §§ 401-34 (2007).   This Court must determine whether the Administrative Law Judge (1) applied the proper legal standard of deference to a treating physician in evaluating Plaintiff's medical evidence, (2) based his Step Two and Step Four medical findings on substantial evidence, (3) applied the proper legal standard in determining whether Plaintiff maintained the residual functional capacity to perform her past relevant work, and (4) properly considered Plaintiff's subjective complaints of pain.  For the reasons discussed below, this Court will affirm the decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits.


**I. Background**

    A.   Procedural History

    Plaintiff filed her application for Disability Insurance Benefits and Supplemental Security Income Benefits on May 25, 2001 with a stated onset date of October 4, 2000.  (R. at 129-32.)  The plaintiff alleged disability due to chronic low back pain syndrome, lumbar radiculopathy and adjustment disorder.  (R. at 149-58.)  Plaintiff's claim was denied initially (R. at 89-94) and upon reconsideration.  (R. at 97-99.)  The plaintiff filed a

Request for Hearing on November 27, 2002 (R. at 100-01), which was held on June 25, 2004.  (R. at 26-86.)  The Administrative Law Judge ("ALJ"), Daniel W. Shoemaker Jr., concluded Plaintiff could return to her past relevant work in a January 20, 2005 decision.  (R. at 11-24.)  Plaintiff then requested a review by the Appeals Council, which was denied on October 28, 2005.  (R. at 4-10.)  Thereafter, on December 30, 2005, the Plaintiff filed the present action.

    B. Evidence in the Record

       1. Plaintiff's Testimony

Plaintiff is a resident of Runnemede, New Jersey who was thirty-five years old at the time of the administrative hearing in 2004.  (R. at 37.)  Plaintiff testified that she lived with her mother, grandmother and two children in a house owned by Plaintiff's grandmother.  (R. at 39.)

Plaintiff testified to her work history as a dental assistant, classroom aide, and restaurant hostess.  (R. at 44.)  Plaintiff last worked as a dental assistant for Dr. Warren Torchinsky in the Fall of 2000.  (R. at 40-41, 44.)  On October 4, 2000, Plaintiff stopped working because of a strong pain in her left side, which radiated into her back.  (R. at 41.)  The pain caused doctors to admit her into the hospital a few times. (Id.)

As a dental assistant in Dr. Torchinsky's office, Plaintiff was required to stand while working and to carry more than 50 pounds at least three times a week when she had to lift patients to and from gurneys.  (<u>Id.</u>)  Additionally, she frequently had to bend, stoop, reach, and kneel.  (<u>Id.</u>)

Plaintiff also testified that she is unable to work because she cannot stand for long periods, cannot bend over, and suffers from mental stress and frustration due to the pain in her back and side.  (R. at 45.)  Due to the condition of her neck, Plaintiff also testified that she cannot turn her head.  (R. at 47.)  Additionally, pressure in her back is so great that somedays her back feels as if "it's going to pop."  (<u>Id.</u>)  According to Plaintiff, the back problems began in 1999 when medical practitioners diagnosed an orthopedic problem.  (<u>Id.</u>)

To alleviate the pain since the diagnosis, Plaintiff has taken various pain medications including Vicodin, Percocet, Roxicodone, and uses a Duragesic patch combined with a variety of different muscle relaxers.  (R. at 48.)  Plaintiff testified the daily pain was severe, estimating it as between 6 to 8 on a scale of 1 to 10.  (R. at 52, 61.)  In addition, she takes prolonged baths four or five times per week in order to ease her leg pain.  (R. at 72.)  At the time of the hearing, Plaintiff's pain management doctor, Dr. German had prescribed a muscle relaxer, Soma, and Neurontin for Plaintiff's leg pain.  (R. at 48-49.)

4

Plaintiff also testified about her physical limitations.
Specifically, Plaintiff states that two to four days a week she
lays in bed all day long.  (R. at 61-62.)  She explained that
pain limits her ability to care for her 18-month-old child.
(Id.)  Further, she states she can only sit in a chair for 20
minutes, stand for 5-10 minutes without shifting, and that it
takes her 10-15 minutes to walk half a block.  (R. at 63.)  As a
result of her physical limitations and the pain, Plaintiff only
does light housework, such as straightening her bed and light
cooking.  (R. at 64, 66.)  Specifically, Plaintiff testified she
has difficulty reaching above her head, experiences muscle strain
when carrying a gallon of milk, and feels discomfort when bending
to put on shoes.  (R. at 64, 68.)

Discussing her claims of psychological impairment, Plaintiff
testified she has never received psychological treatment, but her
primary physician at the time, Dr. Sireci, had prescribed Ambien
as a sleep aid.  (R. at 46, 68-69.)  Plaintiff stopped seeing Dr.
Sireci seven months prior to the hearing before the ALJ.  (R. at
46.)  However, she also testified that she feels depressed now
that pain and physical limitation prevent her from engaging in
her hobbies.  (R. at 70.)  Plaintiff said she currently watches a
lot of TV, but finds it hard to maintain focus, attention and
concentration while doing it.  (R. at 71.)  Finally, the

5

Plaintiff stated that the only daily activity she can perform is to "lay around."  (R. at 73, 75.)

     2. <u>Medical Records</u>

Plaintiff submitted medical reports, opinions, and test results describing her physical and psychological conditions. The medical records indicate conflicting opinions as to the degree of Plaintiff's lower back pain, radiating pain, and cognitive functions.

Medical reports and opinions in the record indicate the degeneration of Plaintiff's back from November 2000 to April 2001.  In November 2000, a consulting physician, Dr. Wallner, examined Plaintiff and an MRI of her lumbar spine and diagnosed her with a mild left lateral disc bulge and foraminal encroachment at L4-5.  (R. at 208.)  Another consulting physician, Dr. Wolfe inspected the results of Plaintiff's Electromyography in December 2000 and discovered denervation in the lumbar paraspinal muscles and tinialis anterior, which was consistent with an L4-5 radiculopathy on the left.  (R. at 226-27.)  In April 2001, Dr. Rogers saw Plaintiff for a consultative examination and performed a lumbar provocative discography[1].  (R. at 336, 350.)  Dr. Rogers reported the discography showed

---

[1] A discography (also known as diskography) is the making of a record of internal structures of the spine through the use of x-rays for visualization of an intervertebral disc after an absorbable medium is injected into the disc itself.  Sloane-Dorland Annotated Medical-Legal Dictionary 187, 463 (Supp. 1992).

degenerative changes at L5-S1.  (Id.)  During May, Plaintiff also had a neurological consultation with Dr. Testiuti that confirmed Plaintiff suffered from discogenic degenerative disease to a minor degree at L4-5 and a significant degree at L5-S1.  (R. at 272.)

Plaintiff's medical records also suggest she potentially suffers from radiculopathy.[2]  After examining Plaintiff as part of a neurological consultation in September 2000, Dr. Tinkelman suggested either radiculopathy or a neurogenic bladder[3] could be the cause of Plaintiff's radiating pain.  (R. at 206.)  Dr. Wolfe's diagnosis of denervation in December 2000 was consistent with an L4-5 radiculopathy on the left.  (R. at 227.) However, Dr. Rogers' examination of the discography and CT scan of the lumbar spine in May 2001 revealed only mild narrowing of the left neural foramen.  (R. at 350.)

Additional medical reports submitted by Plaintiff discuss the level of limitation resulting from her degeneration.  In January 2002, Dr. Marks examined Plaintiff in an evaluation for the New Jersey Dept. of Labor and found she had a full range of cervical spine motion, sat comfortably on the examination table,

---

[2] Radiculopathy is a disease of the nerve roots, causing pain to radiate to different parts of the body.  Sloane-Dorland Annotated Medical-Legal Dictionary 601 (West 1987).

[3] A neurogenic bladder is "any condition of dysfunction of the urinary bladder caused by a lesion of the central of peripheral nervous system. . ."  Id. at 87.

and walked with an inconsistent limp.  (R. at 304-11.)  Almost
nine months later, Dr. Pinsky performed an orthopedic examination
as part of the Dept. of Labor's evaluation and found Plaintiff
had a full range of motion in the cervical spine, normal posture
from inspection of the lumbar spine, but active lumbar flexion
only to 50 degrees due to complaints of tenderness in her lower
back.  (R. at 312-15.)  Dr. Pinsky reports that he uncovered very
few objective findings to substantiate Plaintiff's subjective
complaints of pain.  (Id. at 314.)  Additionally, Dr. Pinsky's
opinion from the orthopedic exam states that Plaintiff was not
limited in her capacity to perform the usual activities of daily
living.  (Id.)  In 2004, Dr. Tinkelman referred Plaintiff to a
another physician, Dr. Jermyn, in an attempt to devise new
treatments for Plaintiff's pain.  (R. at 439-41.)  As her new
treating physician, Dr. Jermyn examined Plaintiff and determined
Plaintiff had generalized low back tenderness, but maintained
full active and passive range of motion in all four extremities.
(Id. at 440.)

Several of Plaintiff's doctors have diagnosed her with
potential psychological impairments, including depression.  In
February 2000, Plaintiff was admitted to the hospital,
complaining of flank and pelvic pain.  (R. at 202-03.)  One of
Plaintiff's treating physicians in the hospital, Dr. Schiller,
suspected Plaintiff suffered from depression and referred her to

8

a hospital psychiatrist.  (Id.)  The psychiatrist spoke with
Plaintiff, agreed with the diagnosis, and prescribed Prozac.
(Id.)  Plaintiff was again diagnosed with depression in June
2004, by her treating physician, Dr. Jermyn during the initial
examination.  (R. at 439-41.)  The cognitive impairment diagnosis
was confirmed by Dr. Goldberg when he conducted a disability
determination examination for the N.J. Dept. of Labor in October
2004.  (R. at 444-50.)  Dr. Goldberg found Plaintiff in a
"depressed mood" and suffering from adjustment disorder, but
rated Plaintiffs' Global Assessment of Functioning ("GAF") score[4]
as indicating only mild psychological symptoms.  (R. at 446-48.)

    3. ALJ's Findings

    The ALJ found the plaintiff was not disabled at any time
since her alleged onset date of disability (October 4, 2000).
(R. at 14-24.)  In support of this conclusion, the ALJ found at
Step Two that Plaintiff's lumbar radiculopathy and psychological
conditions did not constitute "severe" impairments.  (R. at 16,
23.)  Specifically, the ALJ noted Plaintiff offered no evidence
in the record indicating that the depression or radiculopathy
imposed any significant limitations on Plaintiff's ability to

---

    [4] A Global Assessment of Functioning score of 65 corresponds
to "some mild symptoms (e.g., depressed mood and mild insomnia)
or some difficulty in social, occupational, or school functioning
(e.g., occasional truancy, or theft within the household) but
generally functioning pretty well, has some meaningful
interpersonal relationships."  Am. Psychiatric Ass'n, Diagnostic
& Statistical Manual of Mental Disorders 34 (4th ed. 2000).

perform basic work activities.  (Id.)  In addition, the ALJ cited medical evidence in the record suggesting Plaintiff's depression was mild and the lumbar radiculopathy evidence was inconsistent with other medical evidence in the record suggesting her lumbar condition was mild.  (Id.)

Continuing with the sequential analysis, at Step Four, the ALJ found the Plaintiff's lower back impairment did not prevent her from performing past relevant work.  (R. at 21-23.)  The ALJ found the sum of the medical evidence indicated Plaintiff could lift twenty pounds occasionally, stand, sit or walk for six hours in an eight hour day.  (R. at 23.)  As a result, the ALJ found that Plaintiff retained the residual functioning capacity to perform the requirements of her past relevant work as dental assistant and restaurant hostess.  (R. at 22-23.)

## II. Standard of Review

### A.   Standard of Judicial Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a claimant's application for Disability Insurance Benefits.  See Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001).  Substantial evidence means more than "a mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting
Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It
means "such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion."  Id.  The inquiry is not
whether the reviewing court would have made the same
determination, but whether the Commissioner's conclusion was
reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.
1988).  Indeed, the "substantial evidence standard is deferential
and includes deference to inferences drawn from the facts if
they, in turn, are supported by substantial evidence."  Shaudeck
v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

     A reviewing court has a duty to review the evidence in its
totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).
"[A] court must 'take into account whatever in the record fairly
detracts from [a particular piece of evidence's] weight.'"
Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997)
(quoting Willbanks v. Sec'y of Health & Human Servs., 847 F.2d
301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB,
340 U.S. 474, 488 (1951))).

     The Commissioner "must adequately explain in the record
[the] reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

11

Circuit has held an Administrative Law Judge "must review all pertinent medical evidence and explain [any] conciliations and rejections." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence presented.  See id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)).

The Third Circuit has held access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citing Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).

A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). However, an ALJ need not explicitly discuss every piece of relevant evidence in his or her decision.  See Fargnoli, 247 F.3d at 42.

Moreover, apart from the substantial evidence inquiry, a reviewing court is required to satisfy itself that the Commissioner arrived at a decision by application of the proper

legal standards.  <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983) (stating that courts should examine the legal standard applied by the agency because "the judiciary is the final interpreter of the Social Security Act").

     B.   <u>Standard for Disability Insurance Benefits</u>

The Social Security Act defines "disability" for purposes of an entitlement to Disability Insurance Benefits ("DIB") as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2007). Under this definition, "a claimant qualifies as disabled only if [that claimant's] physical or mental impairments are of such severity that [the claimant] is not only unable to do his [or her] previous work, but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B) (2007).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  20 C.F.R. § 404.1520 (2007).  This five-step process is summarized as follows:

1.  If currently is engaged in substantial gainful employment, the claimant will be found "not disabled."

2.  If not suffering from a "severe impairment," the claimant will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If able to still perform work done in the past despite the severe impairment, the claimant will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work, age, education, and past work experience to determine whether or not the claimant is capable of performing other work which exists in the national economy.  If incapable, the claimant will be found "disabled."  If capable, the claimant will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).

Entitlement to benefits is therefore dependent upon finding the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  Id.  In the final step, the Commissioner bears the burden of proving that work is available for the claimant: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner

14

to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987) (citing <u>Chicager v. Califano</u>, 574 F.2d 161 (3d Cir. 1978)).

## III. Discussion

Plaintiff offers four arguments in support of her request that this Court remand the case: (1) the ALJ failed to apply the proper legal standard to a treating physician in evaluating Plaintiff's medical evidence, (2) the ALJ failed to base his Step two and Step four findings on substantial evidence, (3) the ALJ applied an improper legal standard in determining whether Plaintiff could perform her past relevant work, and (4) the ALJ failed to properly consider Plaintiff's subjective complaints of pain.  This opinion will discuss each argument separately.

A. <u>Whether the ALJ applied the proper legal standard in evaluating Plaintiff's medical evidence from her treating physicians</u>

Plaintiff first contends the case should be remanded because the ALJ failed to give sufficient weight to the opinion of Plaintiff's treating physicians as to 1) the severity of Plaintiff's impairments at Step Two (Pl. Br. at 4-8) and 2) Plaintiff's residual functional capacity at Step Four (Pl. Br. at 7-8).

15

In considering what weight to give evidence in the record, the ALJ is not bound to accept the opinion of a treating physician without weighing it against the other medical evidence. Kent v. Schweiker, 710 F.2d 110, 115 n.5 (3d Cir. 1983).  At the same time, the ALJ cannot reject a treating physician's testimony in the absence of contradictory medical evidence.  See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991).  "Absent persuasive contradictory evidence, the validity of the claimant's symptoms can be conclusively established by the opinion of the treating physician."  Smith v. Sullivan, 720 F. Supp. 62, 64 (E.D. Pa. 1989).   An ALJ can only reject the opinion of a treating physician if he or she explains on the record the reasons for doing so.  See Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989); Brewster, 786 F.2d at 585.  Additionally, in determining what weight to give a treating physician's opinion, an ALJ must consider the evidence presented to support the opinion and whether the opinion is consistent with the record as whole.  20 C.F.R. §§ 404.1527(d)(3)-(4) (2007); 416.927(d)(3)-(4) (2007).

### 1. Severity of Plaintiff's Impairments

Plaintiff argues the ALJ erred in his Step Two analysis because the ALJ failed to give proper weight to the medical opinions of Plaintiff's treating physicians regarding the severity of Plaintiff's radiating pain, depression, anxiety and

16

other cognitive problems.  (Pl. Br. at 4-7.)  Specifically,
Plaintiff argues the diagnosis of depression by Dr. Jermyn and
radiculopathy by Dr. Sireci must be given significant weight.
Had the two medical opinions been given sufficient weight,
Plaintiff argues, the ALJ would have concluded that Plaintiff's
radiculopathy and depression constituted severe impairments at
Step Two.

    Plaintiff's argument fails to persuade in this instance
because the ALJ did not simply disregard the medical opinions of
Dr. Jermyn and Dr. Sireci.  Instead, the ALJ substantively
discussed both opinions and found they offered no evidence that
either condition constituted a severe limitation.  (R. at 15-16.)
In fact, the ALJ's decision accepts Dr. Jermyn's diagnosis that
Plaintiff suffers from depression.  (R. at 15.)  The opinion then
engages in a Step Two analysis of what limitations Plaintiff
might have due to the depression.  Citing Dr. Goldberg's opinion
based on an examination of Plaintiff, the ALJ reasons that the
depression does not limit the Plaintiff or constitute a severe
impairment because the plaintiff only suffers from mild symptoms
and maintains extremely good social skills and no cognitive
impairments.  (Id.)  As a result, the opinion applies the proper
legal standard because the ALJ properly gave weight to the
treating physician's diagnosis of depression, but found the
depression was not "severe" in light of persuasive contradictory

17

evidence that Plaintiff's condition did not impair her cognitive ability.

Similarly, the ALJ considered Dr. Sireci's diagnosis of radiculopathy.  However, the ALJ properly found the disease did not constitute a severe impairment based on persuasive contradictory evidence.  The ALJ made the not-severe determination based on Dr. Wallner's notes as a consulting physician in November 2000 that showed no compression at L4-5 (R. at 208) and Dr. Rogers' discography, CT scan, and examination of Plaintiff's lumbar spine in April 2001 that revealed only mild narrowing of the left neural foramen and that the L3-4 and L4-5 discs were largely intact and asymptomatic.  (R. at 336, 350.)

Finding Dr. Sireci's opinion inconsistent with other clinical evidence in the record, the ALJ accorded Dr. Sireci's radiculopathy diagnosis less weight.  In relying on persuasive contradictory evidence to support his conclusion about the non-severity of Plaintiff's radiculopathy, the ALJ applied the proper legal standard at Step Two.

2. <u>Residual Functional Capacity</u>

Plaintiff contends the ALJ erred in determining Plaintiff's residual functional capacity at Step Four because the ALJ's opinion discounts the medical opinion of Plaintiff's primary physician, Dr. Sireci, without explanation.  (Pl. Br. at 5-7.) Dr. Sireci's opinion indicates Plaintiff is able to frequently

18

lift items weighing less than ten pounds (R. at 326), is able to
stand or walk for at least two hours in an eight-hour workday,
can sit for less than six hours in an eight-hour work day, but
pushing and pulling is limited in lower extremities.  (R. at
327.)

     If Dr. Sireci's medical diagnosis of Plaintiff's residual
functional capacity were the only medical opinion in the record,
the ALJ would be bound to accept its conclusions.  However,
Plaintiff submitted medical records from at least three other
doctors who disagreed with Dr. Sireci's opinion.  Dr. Michel,
evaluating Plaintiff's residual functional capacity for the
Social Security Administration, directly contradicted Dr.
Sireci's conclusion.  (R. at 316-23.)  Dr. Michel's report stated
Plaintiff is able to lift twenty pounds occasionally, ten pounds
frequently, to sit, stand or walk for six hours in an eight-hour
workday, as well as to push and/or pull without any limitations.
(R. at 317.)  Additionally, Dr. Pinsky (R. at 312-15) and Dr.
Marks (R. at 306-07) independently examined the plaintiff and
concluded they could find no objective medical cause for her
complaints of pain.  Dr. Marks had access to the Plaintiff's MRI,
EMG and Discogram in forming the medical opinion.  (R. at 304.)

     In his decision, the ALJ granted significant weight to the
medical opinions of Dr. Marks and Dr. Pinksy in determining the
plaintiff's residual functional capacity because the opinions

were consistent with the medical record as a whole.
Additionally, the ALJ explained his reasoning in granting less
weight to Dr. Sireci's opinion of Plaintiff's limitations,
stating it was inconsistent with the medical evidence in the
record.  As a result, the ALJ applied the proper legal standard
in weighing medical opinions because he relied on persuasive
contradictory medical evidence in according the treating
physician's opinion less weight.

B. <u>Whether the ALJ's Step Two and Step Four findings were
supported by substantial evidence</u>

Plaintiff additionally argues the ALJ erred in his Step Two
and Step Four analysis by failing to support his findings with
substantial evidence.  However, as discussed above, the ALJ did
base the findings at Step Two and Step Four on substantial
evidence.  In determining the severity of Plaintiff's impairments
at Step Two and Plaintiff's residual functional capacity at Step
Four, the ALJ relied on medical evidence in the record to make
his findings.  (R. at 14-23.)  Additionally, the ALJ sufficiently
explained that he relied on particular medical evidence that was
consistent "with other clinical evidence in the record".  (R. at
16.)  By relying on the medical evidence in the record and
providing sufficient reasoning for relying on particular
evidence, the ALJ's findings are based on substantial evidence.

C. <u>Whether the ALJ applied the proper legal standard in
     finding the Plaintiff could perform past relevant work</u>

Plaintiff argues the ALJ erred in finding Plaintiff can
perform her "past relevant work" by applying an incorrect legal
standard at Step Four of the sequential disability analysis.
(Pl. Br. 7-9.)  At Step Four of the analysis, the claimant must
demonstrate an inability to still perform work done in the past
("past relevant work").  20 C.F.R. § 404.1520 (2007).  Plaintiff
contends the language of the regulation refers only to the
particular duties and demands of specific prior jobs held by
Plaintiff.  (Pl. Br. 8.)  However, the ALJ's opinion considers
Plaintiff's ability to perform the duties and demands of a
generic classification of Plaintiff's former jobs as listed in
the Dictionary of Occupational Titles ("DOT").  (R. at 22.)  As a
result, the ALJ found Plaintiff retained the residual functional
capacity to perform the duties and demands of a generic dental
assistant and therefore found Plaintiff "not disabled" at Step
four.  (R. at 22-23.)  Plaintiff argues that inquiring into a
claimant's ability to perform the duties and demands of a generic
dental assistant imposes a higher burden of proof on the
plaintiff than intended by 20 C.F.R. § 404.1520.  (Pl. Br. 8-9.)
Instead, according to Plaintiff, the ALJ's inquiry should have
been limited to the duties and demands required of Plaintiff at
the <u>specific</u> dental office where Plaintiff was employed as a
dental assistant and as a result the case should be remanded.

21

However, Plaintiff's argument is not persuasive.  The Social Security Administration has ruled that an ALJ's analysis at Step Four should inquire about the duties and demands required at Plaintiff's specific former jobs and required at a generic classification of Plaintiff's former job.  <u>See</u> SSR 82-61.  To determine the duties and demands of a type of work (as opposed to a specific former job), SSR 82-61 directs the ALJ to consider the requirements of "a broad generic, occupational classification of that job" or the duties and demands of the job as "ordinarily required by employers throughout the national economy" according to the DOT.  <u>Id.</u>

While the Third Circuit has not yet considered this issue, other circuits have overwhelmingly held Step Four analysis requires a two-pronged inquiry into the requirements of specific prior jobs and a generic type of work.[5]  This Court will follow

---

[5] <u>Martin v. Sullivan</u>, 901 F.2d 650, 652-53 (8th Cir. 1990); <u>Steward v. Bowen</u>, 858 F.2d 1295, 1299-1300 (7th Cir. 1988); <u>Studaway v. Sec'y of Health and Human Services</u>, 815 F.2d 1074 (6th Cir. 1987) (finding custodian unable to return to specific custodial job at medium level of exertion could perform custodial job at a light level); <u>Villa v. Heckler</u>, 797 F.2d 794, 797-798 (9th Cir. 1986) (stating "claimant has the burden of proving an inability to return to his former type of work and not just to his former job"); <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1293-94 (11th Cir. 1986); <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 151 (4th Cir. 1983) (holding claimant must show inability to perform past type of work, not simply prior job); <u>Jock v. Harris</u>, 651 F.2d 133, 135 (2d Cir. 1981) (stating claimant's burden was to show an inability to return to her "previous work" as a cashier, not simply to her former job as a "supermarket cashier".); <u>Pelletier v. Sec'y of Health, Educ. and Welfare</u>, 525 F.2d 158, 160-61 (1st Cir. 1975).

the consensus of circuit courts and the Social Security
Administration ruling that, in order to satisfy the burden of
proof at Step Four, the plaintiff must demonstrate not only an
inability to return to former work, but also an inability to
return to a former type of work.

In this instance, the ALJ considered both Plaintiff's
description of the requirements at her former job and the duties
and demands imposed on a dental assistant in general.  The ALJ
found that Plaintiff's physical limitations might prevent her
from returning to her prior job, but did not prevent her from
performing the duties of a dental assistant generally, as that
job is defined by the DOT.  Therefore, the ALJ properly
determined Plaintiff did not meet her burden at Step four because
Plaintiff could not demonstrate her inability to perform "past
relevant work" as defined by the DOT.

   D.  Whether the ALJ failed to properly evaluate Plaintiff's
       subjective complaints of pain

Finally, Plaintiff argues the ALJ failed to properly
consider Plaintiff's subjective complaints of pain in determining
Plaintiff's residual functional capacity, as required by 20
C.F.R. § 404.1529 (2007) and SSR 96-7p, 1996 WL 374186 (2007).
However, subjective complaints of pain "do not in themselves
constitute disability."  Green v. Schweiker, 749 F.2d 1066, 1070
(3d Cir. 1984); 20 C.F.R. § 404.1529(a).  Complaints of pain must
be accompanied by medical evidence demonstrating that a claimant

23

has a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged.  See 20 C.F.R. § 404.1529(a) (explaining "statements about your pain or other symptoms will not alone establish that you are disabled"); see also Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971) (requiring plaintiff to meet burden of showing medical impairment to support subjective complaints of pain).  The ALJ is required to give consideration to Plaintiff's subjective complaints of pain.  Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986).  However, "it is well established that the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical and other evidence, regarding the true extent of the pain alleged by the claimant." Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (quoting Bolton v. Sec'y of Health & Human Servs., 504 F.Supp. 288, 291 (E.D.N.Y. 1980)).

When a plaintiff's subjective complaints of pain indicate a greater severity of impairment than the objective medical evidence supports, the ALJ can give weight to factors such as physician's reports, lay opinions and the plaintiff's daily activities.  See 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, *4 (requiring the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements").  However, where an ALJ properly

24

determines the credibility of a plaintiff's subjective complaints of pain, the reviewing court should not substitute its own determination of credibility for that of the ALJ, given that the ALJ had the opportunity to observe the plaintiff first-hand.  See Weir v. Heckler, 734 F.2d 955, 962 (3rd Cir. 1984) (recognizing that great deference is given to an ALJ's determination of credibility).

Here, the ALJ specifically considered the Plaintiff's complaints of pain in determining her residual functional capacity.  (R. at 20-22.)  The ALJ discussed Plaintiff's allegations of severe pain (12 on a scale of 0-10) to Dr. Goldberg and considered her history of complaints of pain. However, considering the record as a whole, the ALJ found Plaintiff's complaints of pain were not credible because the complaints were "overly vague and exaggerated considering the objective medical findings."  (R. at 21.)  Such an evaluation is bolstered by the medical opinions of Dr. Pinsky (R. at 312-15) and Dr. Marks (R. at 306-07), which state that neither physician could detect an objective medical cause for Plaintiff's complaints of pain.

As the Third Circuit held in Weir, 734 F.2d at 962, the District Court must give great deference to the credibility judgments made by the ALJ as the fact finder when those judgments are supported by evidence in the record.  As a result, the ALJ's

25

credibility evaluation is based on substantial evidence contained in the record.  Therefore, this court declines to substitute its opinion about Plaintiff's credibility for the opinion of the ALJ who was present when the plaintiff testified at the hearing.

**IV.  CONCLUSION**

For the reasons stated above, the Commissioner's finding that Plaintiff was "not disabled" will be affirmed.  The accompanying order will be entered.


**February 27, 2007**            **s/ Jerome B. Simandle**
DATE                             JEROME B. SIMANDLE
                                 United States District Judge